UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAVINA LITTLEJOHN,

      Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

17-CV-999
DECISION & ORDER

---

On October 4, 2017, the plaintiff, Cavina Littlejohn, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 7 at 19. On August 29, 2018, Littlejohn moved for judgment on the pleadings, Docket Item 18, and on November 19, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 24.

For the reasons stated below, this Court grants Littlejohn's motion, in part, and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.   PROCEDURAL HISTORY

On October 30, 2013, Littlejohn applied for Supplemental Security Income benefits. Docket Item 7 at 406. She claimed that she had been disabled since a motor vehicle accident on March 13, 2012, when she suffered injuries to her bi-lateral rotator

cuff and cervical spine; she claimed that she also suffered from depression and arthritis. *Id.*

On February 25, 2014, Littlejohn received notice that her application had been denied because she was not disabled under the Act. *Id.* at 426. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 432, which was held on April 14, 2016, *id.* at 490. The ALJ then issued a decision on June 28, 2016, confirming the finding that Littlejohn was not disabled. *Id.* at 22. Littlejohn appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Littlejohn's objection. Littlejohn was examined by several different providers but only three—Michael Calabrese, M.D.; Stephen Rycyna, M.D.; and Samuel Balderman, M.D.—are significant to her claim of disability here.

### A. Michael Calabrese, M.D.

Michael Calabrese, M.D., is a family-medicine physician who treated Littlejohn several times after her alleged disability onset date. Docket Item 7 at 29. On August 8, 2012, Dr. Calabrese opined that Littlejohn "ha[d] been and remain[ed] temporarily totally impaired as a result of the motor vehicle collision on 03/13/2012 . . . ." *Id.* at 663. He reiterated that opinion when he saw Littlejohn again for several follow-up appointments. *See, e.g., id.* at 621; 642.

Dr. Calabrese completed a Medical Examination for Employability Assessment for the New York State Office of Temporary and Disability Assistance on May 22, 2014. *Id.* at 869. In that assessment, Dr. Calabrese opined on Littlejohn's work limitations: "At

2

this time, the patient is unable to be gainfully employed and remains temp. totally impaired." *Id.* at 870. Dr. Calabrese repeated that impression when filling out the same form again on October 26, 2015: "patient unable to work [at] this time." *Id.* at 868.

**B.     Stephen Rycyna, M.D.**

On May 9, 2013, Littlejohn saw an orthopedic surgeon, Stephen Rycyna, Jr., M.D., complaining of shoulder pain. *Id.* at 813. Dr. Rycyna opined that Littlejohn had a "100%" temporary impairment. *Id.* at 816. Littlejohn saw Dr. Rycyna again on June 6, 2013; July 26, 2013; September 5, 2013; September 16, 2013; and October 21, 2013. *Id.* at 800-12. On each occasion, Dr. Rycyna repeated that Littlejohn had a "100%" temporary impairment. *Id.* On November 21, 2013, Dr. Rycyna opined that Littlejohn had a "25%" temporary impairment, *id.* at 797, but four days later, on November 25, 2013, he opined that Littlejohn had a "50%" temporary impairment, *id.* at 793.

**C.     Samuel Balderman, M.D.**

Samuel Balderman, M.D., is a consultative physician who examined Littlejohn on January 21, 2014. *Id.* at 843. Dr. Balderman opined that Littlejohn had "mild limitations with frequent changes in position of the head" as well as "mild limitation in reaching, pushing, and pulling due to left shoulder pain." *Id.* at 845. In the neurologic portion of his physical examination, Dr. Balderman noted "DTRs physiologic and equal in upper and lower extremities. No sensory deficit noted. Strength 5/5 in the upper and lower extremities." *Id.*

## III. THE ALJ'S DECISION

In denying Littlejohn's application, the ALJ evaluated Littlejohn's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled

4

and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ determined that Littlejohn had not engaged in substantial gainful activity since the alleged onset date. Docket Item 7 at 24. At step two, the ALJ found that Littlejohn had the following severe impairments: "multilevel cervical spinal degenerative disc disease with radiculopathy; left shoulder status post diagnostic arthroscopy with debridement, decompression, and excision; lumbar spinal degenerative disc disease with L4-L5 herniation; [and] obesity." *Id.* At step three, the ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the impairments listed in the regulations. *Id.* at 27.

At step four, the ALJ determined that Littlejohn had the RFC to perform light work, except that she could frequently push and pull with the left upper extremity. *Id.* at 28. Further, the ALJ found that Littlejohn had the RFC to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never to climb ladders, ropes, or scaffolds. *Id.* In reaching that RFC, the ALJ gave "limited weight" to Dr. Calabrese's opinions from 2012 that she was temporarily totally disabled and to "similar fractional or

5

percentage opinions through the record because they were rendered for no-fault and not Social Security disability purposes, are not phrased as function by function analyses, are unsupported by the claimant's intact neurological status, and infringe on the ultimate determination of disability, which is reserved to the Commissioner." *Id.* at 29. The ALJ accorded limited weight to Dr. Rycyna's opinions for the same reasons. *Id.* at 30. The ALJ explained that opinions finding Littlejohn "'disabled' for no-fault purposes . . . were conclusory assertions" and that "when pressed for function by function analyses, the only treating opinion of record shows only moderate limitations, which are supported by the largely benign objective findings on examination by both the treaters and Dr. Balderman." *Id.* at 32. Finally, the ALJ found that with her RFC, Littlejohn could perform past relevant work or, in the alternative, other jobs that exist in significant numbers in the national economy. *Id.* at 33.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court must accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d

6

108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. ALLEGATIONS

Littlejohn objects to the ALJ's RFC determination. Docket Item 18-1 at 17. She specifically argues that the ALJ erred by failing to account for her multiple disorders in the RFC and by failing to properly evaluate and explain medical opinions, resulting in an RFC finding that was unsupported by substantial evidence. *Id.* at 17, 22. Littlejohn also argues that the Appeals Council should have taken new, material evidence into account during her appeal. *Id.* at 27.

This Court finds that because the ALJ failed to "give good reasons" for the weight given to the treating source opinions, remand is required. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion . . . .").[1]

### II. ANALYSIS

When determining a claimant's RFC, the ALJ must evaluate every medical opinion in the record. 20 C.F.R. § 416.927(c). "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to

---

[1] Because this Court finds that remand is necessary for reconsideration of the treating source opinions, and because Littlejohn's other objections—especially the objection involving the alleged failure to consider new evidence—may well be resolved on remand, the Court does not address her other objections.

controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). A treating source is an "acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(1).

A medical opinion is a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Some opinions are not medical opinions at all, however; for example, if they effectively decide the ultimate issue, they opine on a matter reserved to the Commissioner, and they are not considered medical opinions. 20 C.F.R. § 404.1527(d). So an "opinion" by a medical source that a claimant is "'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." 20 C.F.R. § 404.1527(d)(1).

When a medical opinion from a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2). If an ALJ does not give a treating source opinion controlling weight, the ALJ must consider several factors when deciding the weight to give that medical opinion, including the examining relationship, the extent

8

and nature of the treatment relationship, the length of the treatment relationship, whether the medical opinion is supported by medical signs and laboratory findings, the opinion's consistency with the record as a whole, the opinion source's specialization, and other factors the claimant brings to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6).

Here, the ALJ assigned limited weight to the opinions of two treating sources—Drs. Calabrese and Rycyna—without appropriately addressing the factors identified in the regulations. Indeed, the ALJ erred by relying on inappropriate reasons to assign little weight to these treating source opinions.

The first reason that the ALJ gave for discounting these opinions was "because they were rendered for no-fault and not Social Security disability purposes." Docket Item 7 at 29. That was error. While "100%" "temporary impairment" or "remaining temporarily totally impaired," *id.* at 646, 805, may not translate perfectly into Social Security jargon, such assessments certainly shed *some* light on what the ALJ must decide—especially when those assessments were made by the claimant's treating physicians. Before she simply discounted these opinions because they were rendered for no-fault purposes and therefore used no-fault language, it was incumbent on the ALJ at least to recontact the physicians to develop the record—perhaps by asking them to adapt the language of their opinions to the Social Security context. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Ligon v. Astrue*, 2012 WL 6005771, at *20 (E.D.N.Y. Dec. 3, 2012) ("A doctor's opinion is not intrinsically suspect because the patient is seeking other benefits.").

9

On a similar note, the ALJ discounted the treating source opinions because they were "not phrased as function by function analyses." Docket Item 7 at 29. This, too, was error. Whether a medical source opinion is broken down into a function-by-function analysis is not one of the factors that the Commissioner considers when deciding the weight to be given to a treating source opinion. *See* 40 C.F.R. § 404.1527. What is more, if the lack of function-by-function analysis in a medical source's record creates a gap in the record, the ALJ should fill that gap by recontacting the source. *See Tumpower v. Colvin*, 2015 WL 162991, at *14 (W.D.N.Y. Jan. 13, 2015) (remanding "where the ALJ rejected Dr. Newman's opinion in large part because the ALJ found that it was incomplete [and] the ALJ had a duty to develop the record by re-contacting Dr. Newman for clarification regarding [the] foundation for [the] opinion.") (citations omitted). So if the ALJ wanted a function-by-function analysis from Littlejohn's treating physicians here, she should have asked for one instead of simply discounting what the treating physicians said.

Whether objective medical findings support or do not support a medical source opinion is a proper consideration for assigning weight to the opinion. And here, the ALJ assigned limited weight to the treating source opinions because they were "unsupported by the claimant's intact neurological status." Docket Item 7 at 29. But neither Dr. Calabrese's nor Dr. Rycyna's records include any objective findings or opinions that Littlejohn's "neurological status" was "intact"—or, if it was, how that status would affect her level of impairment.[2] If Littlejohn's "neurological status" is, in fact, "intact," and if

---

[2] The ALJ might have surmised Littlejohn's "intact neurological status" from this recurring note in Dr. Calabrese's treatment records: "Neurological Systems: Cranial Nerves: II-XII grossly intact"—or from the fact that the entry for "Neurologic – Stroke,

10

such status is necessarily inconsistent with the treating sources' medical opinions, such determinations must come from a medical source, not from the ALJ's lay opinion. *See McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Fuller v. Astrue*, 2010 WL 3516935, at *5 (W.D.N.Y. Sep. 7, 2010) ("[A]n ALJ is not free to substitute his own lay opinion for opinions from treating sources.").

The ALJ later calls the treating source opinions "conclusory assertions," finding that "when pressed for function by function analyses, the only treating opinion of record shows only moderate limitations, which are supported by the largely benign objective findings on examination by both the treaters and Dr. Balderman." Docket Item 7 at 32. But the ALJ's reference to "both the treaters" evidences the same error identified above. If the ALJ suspected that Dr. Calabrese's or Dr. Rycyna's opinions might be inconsistent with their examination findings or with other medical evidence in the record, she was required at the very least to contact the treating sources in this regard. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'") (quoting *Rosa*, 168 F.3d at 79).

---

TIA, Numbness, Tingling, Headache, Seizures" is checked "No" in the review of systems. *See, e.g.*, Docket Item 7 at 660-661. It is unclear how the ALJ—a lay person—can properly conclude that Littlejohn's "neurological status" is "intact" from these notes or check marks, let alone in a way that makes the treating sources' opinions inconsistent with that finding. And that is especially so when the same records diagnose "Radiculitis Radiculopathy," "Post-Traumatic Headache," "Numbness and Tingling," etc. *Id.* at 645, 662. At the very least, the records are ambiguous and the ALJ should have recontacted Dr. Calabrese regarding them.

Moreover, like the records of Drs. Calabrese and Rycyna, Dr. Balderman's notes do not contain anything that necessarily leads to the conclusion that Littlejohn's "neurological status" was "intact"—let alone that the intact neurological status was inconsistent with, and justified assigning little weight to, the opinions of the treating sources. *Id.* at 841. Deciding whether Littlejohn had "intact neurological status"—and deciding whether that status was inconsistent with the treating source opinions—is squarely within the province of medical professionals, and the ALJ cannot substitute her "own judgment for competent medical opinion." *McBrayer*, 712 F.2d at 799.

Finally, the ALJ discounted the treating source opinions because they "infringe on the ultimate determination of disability, which is reserved to the Commissioner." *Id.* at 29. But that conclusion reads too much into the treating sources' words. A medical opinion "reflect[s] judgments about the nature and severity of [the claimant's] *impairment*(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite *impairment*(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (emphasis added). On the other hand, an "opinion" that infringes on the Commissioner's decision-making authority is not a medical opinion at all. 20 C.F.R. § 404.1527(d). Dr. Calabrese's statements that Littlejohn is "temporarily totally *impaired* as a result of the motor vehicle collision," Docket Item 7 at 646 (emphasis added), and Dr. Rycyna's statements that her "temporary *impairment* [was] 100%,"[3] *id.* at 805

---

[3] As the ALJ correctly noted, Docket Item 7 at 30, Dr. Rycyna found that Littlejohn could return to work with no limitations on 11/25/13 "for the left shoulder only," *id.* at 797. For two reasons, that ambiguous note does not change the analysis. First, just four days later—on the very day that Dr. Rycyna said that the plaintiff could return to work—Dr. Rycyna found that the plaintiff's impairment had worsened from 25% to 50%. *Compare id.* at 793 *with id.* at 797. Second, because the plaintiff's motor vehicle accident that triggered her problems occurred in March 2012, she still would have been

12

(emphasis added), fit squarely within the regulatory definition of a medical opinion. Therefore, these were medical opinions that the ALJ must consider, not "opinions" on the ultimate determination reserved to the Commissioner.

And even if the ALJ were correct that these statements reach legal—and not medical—conclusions, that still would not be good reason for the ALJ simply to disregard them. *See* SSR 96-5p. The ALJ must have a good reason for rejecting "even laconic" treating-source opinions. *Schramm v. Colvin*, 2014 WL 4627222, at *3 (W.D.N.Y. Sep. 15, 2014). So even if the treating source statements were legal conclusions and not medical opinions, the ALJ nonetheless erred by discounting them without first asking for further interpretation or information from the treating sources. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("Reserving the ultimate issue of disability to the Commissioner . . . does not exempt administrative decision makers from their obligation . . . to explain why a treating physician's opinions are not being credited.").

Because the ALJ gave several inappropriate reasons for assigning little weight to treating source opinions without addressing the factors prescribed by regulation, she reached her RFC determination in error. And even if the ALJ were correct in suspecting that the treating source opinions were inconsistent with other record evidence, the ALJ should have recontacted the treating sources to confirm that suspicion and not simply discounted their opinions. The matter is therefore remanded so that the ALJ can

---

disabled for longer than a year—and therefore eligible for benefits, *see* 20 C.F.R. § 404.1505—even if she were no longer disabled in November 2013.

consider the treating source opinions and assign them an appropriate weight in light of the factors identified in 20 C.F.R. § 404.1527.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 24, is DENIED, and Littlejohn's motion for judgment on the pleadings, Docket Item 18, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: March 7, 2019
Buffalo, New York


   *s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE